IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN GINDLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 2:16-cv-22-GMB |
| | ) [WO] |
| NANCY A. BERRYHILL,[1] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On December 25, 2012, Plaintiff John Gindle applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of October 31, 2012. Doc. 13-2. Gindle's claims were denied at the initial administrative level. Doc. 13-2. Gindle then requested and received a hearing before an Administrative Law Judge ("ALJ"), who denied Gindle's claims on June 23, 2014. Doc. 13-2. Gindle requested review of the ALJ's decision by the Appeals Council, but that request was denied on November 30, 2015. Doc. 13-2. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner") as of

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this lawsuit. No further action needs to be taken to continue this lawsuit pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The Clerk of Court is DIRECTED to take the appropriate steps to reflect this change on the docket sheet.

November 30, 2015. Doc. 13-2. Gindle filed his complaint in this court on January 12, 2016. Doc. 1.

The case is before the court for review pursuant to 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73.1 of the Local Rules for the United States District Court Middle District of Alabama, the parties have consented for the undersigned United States Magistrate Judge to conduct all proceedings in this case and enter a final judgment. Docs. 6 & 7. Based on the court's review of the record and the applicable case law, the court finds that the decision of the Commissioner is due to be AFFIRMED, as set forth below.

## I.  STANDARD OF REVIEW

The court reviews a social security case to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted). Indeed, the court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

"Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Jones ex rel.*

*T.J.J. v. Astrue*, 2011 WL 1706465, at *1 (M.D. Ala. May 5, 2011) (citing *Lewis*, 125 F.3d at 1440).  The court must scrutinize the entire record to determine the reasonableness of the decision reached. *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  "If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as a finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision." *Jones*, 2011 WL 1706465, at *2 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)).  The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner's conclusions of law are valid. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Gindle bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

(1) Is the claimant presently unemployed?
(2) Is the claimant's impairment severe?
(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404. Subpt. P, App. 1?
(4) Is the claimant unable to perform his or her former occupation?
(5) Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (quoting 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. DISCUSSION

**A.   Facts**

Gindle was 52 years old at the time of the ALJ's decision. Doc. 13-2. Gindle has a seventh-grade education and no outside or on-the-job training. Doc. 13-2. His past relevant work experience includes employment as a fire sprinkler system pipe fitter and an order picker at a warehouse. Doc. 13-2.

Following an administrative hearing, the ALJ found that Gindle suffers from the following severe impairments: status post fusion, lumbar at L5-S1; multilevel cervical

spondylosis; obesity; and arthritis.[2] Doc. 13-2. Despite these severe impairments, the ALJ found that Gindle did not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. Doc. 13-2. The ALJ further found that Gindle is unable to perform any past relevant work but that he has the RFC to perform light work with the following limitations:

> [T]he claimant can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least one hour and a total of at least six hours over the course of an eight-hour workday. The claimant can occasionally use his upper extremities to reach overhead, push and pull. The claimant can frequently use his lower extremities for the operation of foot controls. The claimant can occasionally climb stairs and ramps. The claimant cannot climb ladders, scaffolds, ropes or poles. The claimant can occasionally balance, stoop, crouch, and kneel. The claimant can occasionally crawl. The claimant can frequently work in wetness and extreme heat. The claimant can occasionally work in humidity and extreme cold. The claimant cannot work at unprotected heights. The claimant can occasionally work with operating hazardous machinery. The claimant can occasionally work while exposed to vibration. The claimant can frequently operate motorized vehicles. He cannot perform work activity that requires his response to rapid and/or frequent demands.

Doc. 13-2. Ultimately, the ALJ concluded that Gindle was not disabled within the meaning of the Social Security Act from October 31, 2012, his alleged disability onset date, through the date of the ALJ's decision, and the ALJ denied his claims. Doc. 13-2.

**B.     Issues Presented**

Gindle presents two issues for the court's review. First, Gindle contends that the

---

[2] The ALJ also found that Gindle suffers from the following non-severe impairments: hypertension; hypercholesterolemia; status post cholecystectomy; obstructive sleep apnea; major depressive disorder, severe, recurrent versus seasonal pattern depression; possible history of agoraphobia with panic attack; and history of substance abuse. Doc. 13-2.

ALJ improperly substituted his judgment for that of the vocational expert ("VE") when determining whether there are jobs in sufficient numbers in the national economy that Gindle could perform. Doc. 11 at 3.  Second, Gindle contends that the ALJ erred when he "forced" Gindle to explain during the administrative hearing why he could not perform the job of garment sorter. Doc. 11 at 6.  The court concludes that, for the reasons explained below, neither of these arguments has merit.  Therefore, the Commissioner's decision is due to be affirmed.

"Social security proceedings are inquisitorial rather than adversarial," and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–111 (2000) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  Testimony from a vocational expert is "highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability claimants." *Holley v. Chater*, 931 F. Supp. 840, 851 (S.D. Fla. 1996).  "[W]hen the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT . . . because the DOT 'is not the sole source of admissible information concerning jobs.'" *Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999) (quoting *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994)).

During the administrative hearing, the ALJ provided the VE with the following hypothetical:

> [P]lease consider an individual of the claimant's vocational profile[3] and the

---

[3] Gindle's vocational profile was "an individual approaching advanced age, he has a limited education, he has an excellent work history, and he has work history as characterized by the vocational expert." Doc. 13-2 at 63.

> following limitations: limited to light work activity; assume this individual could sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday; this individual could stand and/or walk at least one hour without interruption a total of at least six hours over the course of an eight-hour workday; this individual can occasionally use his upper extremities to reach overhead and—overhead push and pull; no additional limitations involving the upper extremities; he can frequently use his lower extremities for the operation of foot controls; he can occasionally climb stairs and ramps; he cannot climb ladders, scaffolds, ropes, or poles; he can occasionally balance, stoop, crouch, and kneel; he can occasionally crawl; he can frequently work in wetness and extreme heat; he can occasionally work in humidity and extreme cold; he cannot work at unprotected heights; he can occasionally work with operating hazardous machinery; he can occasionally work while exposed to vibration; he can frequently operate motorized vehicles; he cannot perform work activity that requires his response to rapid and/or frequent multiple commands.

Doc. 13-2 at 63–64. In response to this hypothetical, the VE testified that there were a "few things" he believed an individual with these limitations could perform—the jobs of car driver and small products assembler, both with a sit/stand option. Doc. 13-2 at 63.

The ALJ then asked the VE about whether the jobs of garment sorter, inserter, and marker II would also fall within the proffered hypothetical. Doc. 13-2 at 65–67. The VE testified that he was "happy to list" garment sorter with a sit/stand option, that inserter would be "great" per the Dictionary of Occupational Titles, and that marker II would also be included with a sit/stand option. Doc. 13-2 at 63–69. Gindle's counsel did not object to the ALJ's questioning of the VE, and she did not cross-examine the VE with respect to any of the proffered jobs. Doc. 13-2. Based on the VE's testimony, the ALJ ultimately concluded that, when considering Gindle's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines,[4] there are jobs that exist in significant

---

[4] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

7

numbers in the national economy that he can perform—specifically, the jobs of car driver, small products assembler, garment sorter, and marker II—and, thus, he is not disabled within the meaning of the Social Security Act. Doc. 13-2.

Gindle contends that it was error for the ALJ to ask the VE whether the jobs of garment sorter, inserter, and marker II would fit the given hypothetical when the VE initially identified only the jobs of car driver and small products assembler. Gindle argues that, in asking these questions, the ALJ improperly substituted his judgment for the VE when determining whether there are jobs that exist in significant numbers in the national economy that Gindle could perform and that he "forced the VE to accept the ALJ's proffered jobs instead of using the VE's own recommendations." Doc. 11. Inquiring into additional jobs that may fit a hypothetical and fully developing a record are not tantamount to an improper substitution of the ALJ's own opinion for that of the vocational expert's. Even assuming that the ALJ's additional questions about the jobs that may fit a given hypothetical equate to an "opinion" of the ALJ, Gindle acknowledges the weakness of his argument in representing that "[t]here is no case law on point for Plaintiff's contention that an ALJ cannot substitute his opinion for a VE's opinion." Doc. 11.

The ALJ's hypothetical included the same limitations that he included in Gindle's ultimate RFC assessment. Moreover, the ALJ relied on the two jobs suggested by the VE—car driver and small parts assembler—in addition to two additional jobs the ALJ inquired into—garment sorter and marker II. Given that the ALJ undisputedly relied on the two jobs initially suggested by the VE, the court cannot conclude that the ALJ wholly rejected the VE's opinion and substituted his own opinion with respect to what jobs Gindle

could perform in the national economy.  Finally, even if the court were to disregard the jobs of garment sorter and marker II, the record still reflects that there are 28,400 car driver jobs and 30,000 small parts assembler jobs available nationwide that fit into the ALJ's hypothetical.  When combined, this is sufficient evidence to support the Commissioner's finding that Gindle is not disabled because there are a significant number of jobs in the national economy he can perform within the limitations of his RFC.

Also lacking merit is Gindle's argument that the ALJ erred when he forced Gindle to explain why he could not perform the job of garment sorter.  First, the ALJ did not force Gindle to provide this explanation; rather, the ALJ initially asked the VE to explain to Gindle what a garment sorter does and to provide an example. Doc. 13-2 at 70.  Once the VE explained to Gindle that a common example of a garment sorter was someone who sorted through bags of clothing donated to charity, the ALJ asked Gindle why he thought he could not perform this job, and Gindle explained it was because of the "standing and repetition of folding clothes." Doc. 13-2 at 70.  Gindle argues that this line of questioning was inappropriate and prejudicial, but again he fails to articulate any meaningful authority, argument, or support for this claim.  In the absence of persuasive argument, the court fails to see how Gindle's "stumbled" response to this question had any effect, much less a prejudicial effect, on the outcome of his claims.  If anything, this questioning was simply an attempt by the ALJ to fulfill his duty to develop a full and fair record.

Indeed, the "ALJ plays a crucial role in the disability review process.  Not only is he duty-bound to develop a full and fair record, he must carefully weigh the evidence, giving individualized consideration to each claim that comes before him." *Miles*, 84 F.3d

at 1401.  Gindle has not met his burden of demonstrating that the ALJ was impartial, that he acted in a prejudicial manner, or that he denied Gindle a full and fair hearing.  Gindle also has not met his burden of demonstrating that he could not perform any of the jobs on which the ALJ relied in denying his claims, including the two initially proffered by the VE (car driver or small products assembler), or that the ALJ otherwise reached a decision that is unsupported by substantial evidence.  Accordingly, for the reasons set forth above, the court concludes that the Commissioner's decision denying Gindle's claims is due to be affirmed.

## IV.  CONCLUSION

Based on the forgoing, it is ORDERED that the decision of the Commissioner is AFFIRMED.  A final judgment consistent with this opinion will be entered separately.

DONE this 31st day of July, 2017.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE